UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASHLEY SAVAGE, DAVID LEIDLEIN, RONALD COHEN, AND JAMES SHERBURNE *individually and as representatives of similarly situated persons, and on behalf of the Plan,*<br><br>*Plaintiffs,*<br><br>v.<br><br>SUTHERLAND GLOBAL SERVICES, INC., CVAGS, LLC d/b/a CLEARVIEW GROUP, SHILPA KONDA, DIANE MOHORTER, LORI D'AMBROSIO, KATHLEEN DECANN, AND JOHN DOES 1-20,<br><br>*Defendants.* | CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>Civil Action No.<br><br>——————— |

Plaintiffs Ashley Savage, David Leidlein, Ronald Cohen, and James Sherburne ("Named Plaintiffs"), individually and on behalf of the Sutherland Global Services, Inc. 401(k) Plan ("Plan") and all other similarly situated participants and beneficiaries of the Plan (collectively, "Plaintiffs"), by and through their attorneys, Thomas & Solomon LLP, bring this class action complaint against Sutherland Global Services, Inc., CVGAS, LLC d/b/a Clearview Group, Shilpa Konda, Diane Mohorter, Lori D'Ambrosio, Kathleen Decann, and John Does 1-20 (collectively, "Defendants"), and allege as follows:

<u>NATURE OF ACTION</u>

1.     This lawsuit seeks to recover damages in the form of losses suffered by the Plan and losses to Plaintiffs' retirement savings as well as injunctive and other equitable relief for the Plan and on behalf of the Named Plaintiffs and similarly situated participants and beneficiaries of the Sutherland Global Services, Inc. 401(k) Plan.

2.     Named Plaintiffs bring this suit individually and on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2) and (3) as a class action on behalf of the Plan and similarly situated

- 1 -

participants and beneficiaries of the Plan pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") against Defendants for breach of fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA").

3.      Plaintiffs seek relief for Defendants' breach of their fiduciary duties. Defendants failed to properly minimize the reasonable fees and expenses of the Plan. Defendants instead incurred expenses that were excessive, unreasonable and/or unnecessary. Defendants failed to take advantage of the Plan's bargaining power to reduce fees and expenses. Defendants failed to offer a prudent mix of investment options.  Defendants impaired participants' returns by offering actively managed retail class mutual funds as investment options instead of identical investor class mutual funds with lower operating expenses. To the extent any fiduciary responsibilities were properly delegated, Defendants failed to ensure that any delegated tasks were being performed prudently and loyally in accordance with ERISA. Defendants failed to properly undertake the requisite monitoring and supervision of fiduciaries to whom they had delegated fiduciary responsibilities. Defendants failed to discharge their fiduciary duties with the requisite expert care, skill, prudence and diligence. Defendants enabled other fiduciaries to commit breaches of fiduciary duties for which Defendants are liable.

4.      Through this conduct, Defendants violated their fiduciary obligations under ERISA and caused damages to the Plan and to Plaintiffs. Plaintiffs bring this action to remedy this unlawful conduct, prevent further mismanagement of the Plan, and obtain equitable and other relief as provided by ERISA.

## JURISDICTION AND VENUE

5.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

6.      Venue is appropriate in the Western District of New York since the Plan is administered in this district, the breach took place in this district, and Defendants reside in this district.

## THE PARTIES

*Named Plaintiffs*

7.      Named Plaintiff Ashley Savage resides in Covington, Georgia and worked as a Customer Service Representative at Sutherland Global Services, Inc. Ms. Savage is a participant in the Plan under 29 U.S.C. § 1002(7) because she and her beneficiaries are or may become eligible to receive benefits under the Plan.

8.      Named Plaintiff David Leidlein resides in Livonia, New York and worked as a Technical Support Master Coach at Sutherland Global Services, Inc. Mr. Leidlein is a participant in the Plan under 29 U.S.C. § 1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan.

9.      Named Plaintiff Ronald Cohen resides in Rochester, New York and worked as a Director of Learning and Development at Sutherland Global Services, Inc. Mr. Cohen is a participant in the Plan under 29 U.S.C. § 1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan.

10.      Named Plaintiff James Sherburne resides in Ben Lomond, California and worked as a Senior Director of Portfolio Marketing at Sutherland Global Services, Inc. Mr. Sherburne is a participant in the Plan under 29 U.S.C. § 1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan.

11.      During the proposed class period, Named Plaintiffs invested in funds including, for example the T. Rowe Price Retirement Target Date mutual funds.

*Defendants*

**Sutherland Global Services, Inc.**

12.     Sutherland Global Services is a New York corporation with its principal executive office located in Pittsford, New York.

13.     Sutherland Global Services provides process transformation services. It offers human resources management, operational analytics, robotic process automation, and cloud services.

14.     Sutherland Global Services is the Sponsor of the Plan under 29 U.S.C § 1002(16)(B), the administrator of the Plan under 29 U.S.C. § 1102(16)(A), and a party in interest to the Plan under 29 U.S.C. § 1002(14).

15.     Sutherland Global Services is a named fiduciary of the Plan under 29 U.S.C. § 1102(a)(2).

16.     Sutherland Global Services is a fiduciary to the Plan under 29 U.S.C. § 1002(21) because it exercises  discretionary authority or discretionary control regarding the management of the Plan, exercises authority or control regarding the management or disposition of the Plan's assets, and/or has discretionary responsibility in the administration of the Plan.

17.     Sutherland Global Services has the discretionary authority to control and manage the operation and administration of the Plan for the exclusive benefit of the participants and their beneficiaries as required by ERISA.

18.     Sutherland Global Services has discretionary authority to determine all questions arising in connection with the administration, interpretation, and application of the Plan and any related documents and underlying policies.

19.     Sutherland Global Services has authority to take action as may be necessary to correct any defect, omission or inconsistency in the Plan.

20.     Sutherland Global Services has or claims to have authority to delegate authority, duties and/or responsibilities including fiduciary duties or responsibilities, under the Plan.

21.     Sutherland Global Services has or claims to have authority to designate other parties to perform, duties and/or responsibilities of the Administrator and has a fiduciary duty to monitor those parties and the Plan itself.

22.     Such authority to appoint, retain, remove and/or delegate to the Plan's fiduciaries constitutes discretionary authority or control over the management or administration of the Plan.

23.     The responsibility for designating and removing other parties to perform fiduciary duties carries with it an accompanying duty to monitor the appointed fiduciaries, to ensure that they were complying with the terms of the Plan and ERISA's statutory standards.

24.     Furthermore, that monitoring duty carries with it a responsibility to take action upon discovery that an appointed fiduciary is not performing properly.

25.     Sutherland Global Services has a continuing duty, under the Plan and under ERISA, to review and monitor the performance of any fiduciary or other person to whom duties have been delegated or allocated.

**CVAGS, LLC**

26.     CVGAS, LLC (d/b/a Clearview Group) is a domestic limited liability company located in Atlanta, Georgia.

27.     CVGAS, LLC is an "investment manager" of the Plan as defined by 29 U.S.C. § 1002(38).

28.     Certain responsibilities in connection with the Plan were delegated to CVGAS, LLC, including the responsibility to select and monitor the array of investment options to be included in the Plan.

29.     These and/or other responsibilities were delegated to CVGAS, LLC, by Sutherland Global Services, Inc., and/or other fiduciaries of the Plan.

## Shilpa Konda

30.     Shilpa Konda holds the position of Senior Manager, Human Resources at Sutherland Global Services.

31.     Shilpa Konda is or holds herself out to be a Plan Administrator.

32.     For example, the Plan's Form 5500s for 2016 and 2017, filed with the United States Departments of Labor and Treasury, identify Shilpa Konda on the line for "signature of plan administrator."

33.     Shilpa Konda has discretionary authority to control and manage the operation and administration of the Plan.

34.     Shilpa Konda is responsible for the management and administration of the Plan.

35.     Shilpa Konda exercises discretion in administering and managing the Plan and/or controlling the Plan's assets.

36.     These various powers and duties give Shilpa Konda discretionary authority and responsibility in the administration of the Plan, permit Ms. Konda to exercise discretionary authority or control respecting management of the Plan, and allow Ms. Konda to exercise authority or control respecting management or disposition of the Plan assets.

**Diane Mohorter**

37.     Diane Mohorter holds the position of Director of Benefits, NA and UK at Sutherland Global Services.

38.     Diane Mohorter is or holds herself out to be a Plan Sponsor and Plan administrator.

39.     For example, the Plan's Form 5500s for 2013 and 2014, filed with the United States Department of Labor and Treasury, identify Diane Mohorter on the line for "signature of employer/plan sponsor."

40.     Further the Plan's Form 5500 for 2015 identifies Diane Mohorter on the line for "signature of plan administrator."

41.     Diane Mohorter has discretionary authority to control and manage the operation and administration of the Plan.

42.     Diane Mohorter is responsible for the management and administration of the Plan.

43.     Diane Mohorter exercises discretion in administering and managing the Plan and/or controlling the Plan's assets.

44.     These various powers and duties give Diane Mohorter discretionary authority and responsibility in the administration of the Plan, permit Ms. Mohorter to exercise discretionary authority or control respecting management of the Plan, and allow Ms. Mohorter to exercise authority or control respecting management or disposition of the Plan assets.

**Lori D'Ambrosio**

45.     Lori D'Ambrosio held the position of Senior Benefits Analyst at Sutherland Global Services.

46.    Lori D'Ambrosio was or held herself out to be a Plan Administrator.

47.    For example, the Plan's Form 5500 for plan year beginning October 1, 2013 and ending September 30, 2014, filed with the United States Department of Labor and Treasury, identifies Lori D'Ambrosio on the line for "signature of plan administrator."

48.    Lori D'Ambrosio had discretionary authority to control and manage the operation and administration of the Plan.

49.    Lori D'Ambrosio was responsible for the management and administration of the Plan.

50.    Lori D'Ambrosio exercised discretion in administering and managing the Plan and/or controlling the Plan's assets.

51.    For example, in her role as Senior Benefits Analysist, Lori D'Ambrosio held herself out as having numerous responsibilities with respect to the Plan, including preparing and analyzing benefit reports, handling all day-to-day benefits inquiries/issues from employees, processing all benefit enrollment transactions/issues with vendors, and reviewing the Plan's Summary Plan Description.

52.    These various powers and duties gave Lori D'Ambrosio discretionary authority and responsibility in the administration of the Plan, permitted Ms. D'Ambrosio to exercise discretionary authority or control respecting management of the Plan, and allowed Ms. D'Ambrosio to exercise authority or control respecting management or disposition of the Plan assets.

**Kathleen DeCann**

53.    Kathleen DeCann holds the position of Benefits Manager at Sutherland Global Services.

54. Kathleen DeCann is or holds herself out to be a Plan Administrator.

55. For example, the Plan's Form 5500 for 2014, filed with the United States Departments of Labor and Treasury, identify Kathleen DeCann on the line for "signature of plan administrator."

56. Kathleen DeCann has discretionary authority to control and manage the operation and administration of the Plan.

57. Kathleen DeCann is responsible for the management and administration of the Plan.

58. Kathleen DeCann exercises discretion in administering and managing the Plan and/or controlling the Plan's assets.

59. These various powers and duties give Kathleen DeCann discretionary authority and responsibility in the administration of the Plan, permit Ms. DeCann to exercise discretionary authority or control respecting management of the Plan, and allow Ms. DeCann to exercise authority or control respecting management or disposition of the Plan assets.

**Other Defendants**

60. Defendants possess and/or claim to possess the authority to delegate certain responsibilities to other persons.

61. Any individual or entity to whom Defendants delegated any of their fiduciary functions or responsibilities are also fiduciaries of the Plan under 29 U.S.C. § 1002(21)(A) and § 1105(c)(2).

62. Because the individuals and/or entities that may have been delegated fiduciary responsibilities by Defendants are not currently known to Plaintiffs, they are collectively named as John Does 1-20.

## ERISA FIDUCIARY DUTIES

63.     As described in this Complaint, each Defendant is a named fiduciary and/or a functional fiduciary and/or undertakes fiduciary duties and responsibilities and, therefore, each Defendant is subject to liability for breach of fiduciary duties.

64.     ERISA imposes strict fiduciary obligations.

65.     Defendants' fiduciary obligations require that, at all times, they conduct themselves with the utmost good faith, loyalty and fidelity; act with the sole purpose of advancing the interests of the Plan, their participants, and beneficiaries; scrupulously avoid all self-interest, duplicity, and deceit; and fully disclose to and inform participants and beneficiaries of all material information.

66.     Defendants, as fiduciaries, are required to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries.

67.     ERISA also imposes fiduciary duties of loyalty and prudence upon Defendants as fiduciaries of the Plan. These fiduciary duties are "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

68.     The fiduciary duty of loyalty requires Defendants to discharge their duties for the exclusive purpose of providing benefits to participants and their beneficiaries.

69.     The fiduciary duty of loyalty requires Defendants to discharge their duties for the exclusive purpose of defraying reasonable expenses of administering the Plan.

70.     Defendants' fiduciary obligations under ERISA require that they exercise the care, skill, and diligence of a prudent expert in these matters.

71.     The fiduciary duty of prudence encompasses a duty to select prudent investments.

72.     Pursuant to the prudent investor rule, fiduciaries are required to incur only costs that are reasonable in amount and appropriate to the investment responsibilities.

73.     Defendants' fiduciary obligations under ERISA require that they discharge their duties with the exclusive purpose of providing benefits to the Plan's participants and beneficiaries and defraying the reasonable costs of administering the Plan.

74.     In addition, under ERISA a fiduciary has a continuing duty to monitor plan investments and remove imprudent ones that exists separate and apart from the fiduciary's duty to exercise prudence in selecting investments.

75.     Failing to closely monitor and/or minimize administrative expenses constitutes a breach of fiduciary duty.

76.     To the extent any Defendants properly delegated fiduciary duties, Defendants are also subject to liability for breach of fiduciary duties to monitor and/or supervise the activities of those fiduciaries to whom such duties have been delegated.

77.     Defendants were obligated to ensure that any delegated tasks were being performed prudently and loyally in accordance with ERISA.

78.     Defendants are also subject to co-fiduciary liability. ERISA imposes explicit co-fiduciary duties on plan fiduciaries. 29 U.S.C. § 1105(a) states, in pertinent part, that:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
>> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or
>>
>> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his

status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

## FACTS

*The Plan*

79.     The Plan is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34).

80.     The Plan was effective October 1, 1996.

81.     Effective January 1, 2015, the Sutherland Global Services, Inc. Virginia Beach 401(k) Plan and the Sutherland Global Services, Inc. Tulsa 401(k) Plan merged into the Plan.

82.     Effective December 31, 2016, the Sutherland Healthcare Solutions Inc., 401(k) Plan merged into the Plan.

83.     As of December 31, 2017, the Plan had $57,880,306 in net assets, 9,301 total participants and 8,267 participants with account balances.

84.     As of December 31, 2017, the Plan offered participants the following investment options:

    a.  4 Common/Collective Trusts:

- Putnam Stable Value Fund
- State Street S&P 500 Index Fund – VIII
- State Street S&P Mid Cap Index Fund – NL G
- State Street Russell Small Cap Index Fund – VI

    b.  25 Registered Investment Companies:

- T. Rowe Price Retirement 2010 Advisor Class
- T. Rowe Price Retirement 2015 Advisor Class
- T. Rowe Price Retirement 2020 Advisor Class
- T. Rowe Price Retirement 2025 Advisor Class

- T. Rowe Price Retirement 2030 Advisor Class
- T. Rowe Price Retirement 2035 Advisor Class
- T. Rowe Price Retirement 2040 Advisor Class
- T. Rowe Price Retirement 2045 Advisor Class
- T. Rowe Price Retirement 2050 Advisor Class
- T. Rowe Price Retirement 2055 Advisor Class
- T. Rowe Price Retirement 2060 Advisor Class
- T. Rowe Price Retirement Balanced Fund Advisor Class
- T. Rowe Price Small Cap Stock Fund Advisor Class
- Fidelity Advisor New Insights Fund Class A
- Fidelity Advisor Large Cap Fund Class A
- Fidelity Advisor Strategic Income Fund Class A
- Fidelity Advisor Real Estate Fund Class A
- Ariel Fund Investor Class
- Pioneer Bond Fund Class Y
- MFS International Value Fund Class R3
- Putnam Equity Income Fund Class A
- Oppenheimer International Growth Fund Class A
- Parametric Emerging Markets Fund Investor Class
- Janus Henderson Balanced Fund Class S

### *Defendants Failed to Minimize the Plan's Fees and Expenses*

85.     Defendants failed to satisfy their fiduciary duties by failing to defray the Plan's fees and expenses.

86.     Excessive fees and expenses can significantly impair the value of returns and dramatically affect the amount of money participants are able to save for retirement. Over time, even seemingly small differences in fees and performance can result in vast differences in the amount of savings available at retirement. For example, according to a bulletin issued by the Securities and Exchange Commission, in an investment portfolio investing $100,000 with a 4% annual return over 20 years, just a 0.25% increase in annual fees reduces the portfolio value by $10,000. SEC Office of Investor Education and Advocacy, *How Fees and Expenses Affect Your Investment Portfolio*, *available at* https://www.sec.gov/investor/alerts/ib_fees_expenses.pdf.

87.     Defendants are responsible to perform or contract for administrative, record-keeping, investment management, and other services on behalf of the Plan.

88.     ERISA requires that the fees for these services must be reasonable, incurred solely for the benefit of the Plan's participants, and fully disclosed.

89.     Defendants have a fiduciary duty to defray all reasonable expenses of the Plan, including those related to administrative services such as recordkeeping, trustee and custodial services, accounting, and others.

90.     Fiduciaries can minimize plan expenses by hiring low-cost service providers.

91.     Economies of scale generally result in lower administrative expenses on a per-participant or percentage-of-assets basis.

92.     To ensure that plan recordkeeping and other administrative expenses are and remain reasonable for the services provided, prudent fiduciaries of large plans put those services out for competitive bidding at regular intervals and monitor costs regularly.

93.     The scope of Defendants' fiduciary duties and responsibilities includes managing the assets of the Plan for the sole and exclusive benefit of the Plan's participants and beneficiaries, defraying reasonable expenses of administering the Plan, and acting with the expert care, skill, diligence, and prudence required by ERISA.

94.     Defendants are directly responsible for ensuring that the Plan's fees are reasonable, not excessive, incurred solely for the benefit of the Plan and the Plan's participants, and fully disclosed to participants.

95.     Pursuant to the prudent investor rule, Defendants as fiduciaries are required to incur only costs that are reasonable in amount and appropriate to the investment responsibilities of the trusteeship.

96.     Either directly or indirectly, Defendants have caused the Plan to purchase trustee, recordkeeping, administration, investment management, brokerage, consulting, auditing, and/or other services. These fees are, and have been, unreasonable and excessive, especially in light of the Plan's size and asset value.

97.     By subjecting the Plan to such excessive fees and by selecting investment options that assessed excessive fees against participants' accounts, Defendants breached their fiduciary duties.

98.     Either directly or indirectly, Defendants have caused the amounts that the Plan pays for these services to be assessed against the Plan's assets.

99.     For example, based on Defendants' publicly available statements and representations, it appears that the total administrative expenses, not including indirect compensation, incurred by the Plan in 2018 exceeded $695,000 and represented expenses of more than approximately $120 per participant.

100.    Defendants' fiduciary obligations include the prudent and proper selection of investment options for the Plan.

101.    For example, through in or about mid-2019, the 13 T. Rowe Price mutual funds offered by the Plan were all advisor or retail class funds, as opposed to investor or institutional class funds.

102.    The advisor or retail class T. Rowe Price funds offered by the Plan charge a 12b-1 fee of .25% of the fund's net assets.

103.    A 12b-1 fee is an annual charge for marketing or distribution. Participants of the Plan derive no benefit from the 12b-1 fee.

104.  The T. Rowe Price funds also have investor or institutional class shares which do not charge a 12b-1 fee. A chart comparing the operating expense fees is below:

| Share Class Offered by Plan (in or about mid-2019) | | Identical Fund Lower Fee Investor Class | | Identical Fund Lower Fee I Class | |
|---|---|---|---|---|---|
| Fund | Annual Operating Expense | Fund | Annual Operating Expense | Fund | Annual Operating Expense |
| PARAX | 0.78 | TRRAX | 0.53 | TRPAX | 0.45 |
| PARHX | 0.81 | TRRGX | 0.56 | TRFGX | 0.45 |
| PARBX | 0.84 | TRRBX | 0.59 | TRBRX | 0.46 |
| PARJX | 0.88 | TRRHX | 0.63 | TRPHX | 0.50 |
| PARCX | 0.91 | TRRCX | 0.66 | TRPCX | 0.53 |
| PARKX | 0.93 | TRRJX | 0.68 | TRPJX | 0.56 |
| PARDX | 0.95 | TRRDX | 0.70 | TRPDX | 0.58 |
| PARLX | 0.96 | TRRKX | 0.71 | TRPKX | 0.59 |
| PARFX | 0.96 | TRRMX | 0.71 | TRPMX | 0.60 |
| PAROX | 0.97 | TRRNX | 0.72 | TRPNX | 0.63 |
| TRRYX | 0.97 | TRRLX | 0.72 | TRPLX | 0.59 |
| PARIX | 0.76 | TRRIX | 0.51 | TRPTX | 0.45 |
| PASSX | 1.16 | OTCFX | 0.89 | OTIIX | 0.75 |

105.  During the relevant period a prudent fiduciary would have reviewed the Plan's investment options and selected at least the Investor Class and, for some investment options, the I Class.

106.  In addition, other investments Defendants selected as options for the Plan likewise charge far higher fees than their readily available lower cost share class equivalents, including those identified in the chart below comparing the total operating expense of the class offered by the Plan and the total operating expense of readily available lower cost share class:

| Share Class Offered by Plan (in or about mid-2019) | | Identical Fund Lower Fee Share Class | |
|---|---|---|---|
| Fund | Annual Operating Expense | Fund | Annual Operating Expense |
| FNIAX | 1.05 | FINSX | 0.79 |
| FALAX | 0.92 | FALIX | 0.66 |
| FSTAX | 0.98 | FSRIX | 0.74 |
| FHEAX | 1.10 | FHEIX | 0.82 |
| JABRX | 1.07 | JABNX | 0.57 |
| MINGX | 0.98 | MINJX | 0.63 |
| PEYAX | 0.91 | PEQSX | 0.55 |
| OIGAX | 1.10 | OIGYX | 0.85 |
| OPPAX | 1.08 | OGLIX | 0.67 |
| EAEMX | 1.44 | EIEMX | 1.19 |

107.    Retail share classes of mutual funds are typically marketed to individuals with small amounts to invest whereas institutional share classes are offered to investors with large amounts to invest, such as large retirement plans. The different share classes of a mutual fund, such as the T. Rowe Price funds and other funds, are identical in all ways except that the retail shares have a 12b-1 fee, resulting in a higher annual operating expense and lower returns for the retail class investors.

108.    In the extremely competitive 401(k) marketplace, retirement plans with very large pools of assets, have the ability to use their bargaining power to obtain institutional classes of shares without 12b-1 fees and, therefore, lower operating expenses.

109.    Defendants' selection of mutual funds with 12b-1 fees instead of offering identical funds without those fees is imprudent since participants derive no benefit from those fees.

110.    A prudent fiduciary would have selected the investor or institutional class of the mutual funds instead of the retail class of funds with the 12b-1 fee.

- 17 -

111.    The T. Rowe Price retail class funds offered by the Plan are the only class of target retirement date mutual funds offered and constitute a majority of the mutual fund options offered by the Plan.

112.    A prudent investor would not have retained these more expensive share classes when other less expensive share classes were available.

113.    Defendants knew or should have known of the existence of these cheaper share classes and therefore also should have immediately identified the prudence of transferring the Plan into the lower-cost shares.

114.    In fact, in or around sometime after March 2019, Defendants did transfer some, but not all, of the Plan's funds to the identical but lower share cost option.

115.    A prudent fiduciary would have reviewed the Plan's investments and would have identified the cheaper share classes available and transferred the Plan's investments into institutional shares at the earliest opportunity. Yet, despite the availability of lower-cost shares, Defendants did not transfer the Plan's holdings in any of these funds from retail shares into institutional shares, in breach of their fiduciary duties.

116.    There is no good-faith explanation for utilizing high-cost share classes when lower-cost share classes are available for the exact same investment. The Plan did not receive any additional services or benefits based on the use of more expensive share classes; the only consequence was higher costs for the Plan's participants.

117.    Therefore, Defendants acted imprudently by failing to offer a sufficient mix of investment options for the participants in the Plan.

## CLASS ACTION ALLEGATIONS

118.    29 U.S.C. § 1132 (a)(2) authorizes any participant or beneficiary to bring an action on behalf of a plan for relief under 29 U.S.C. § 1109 for breach of fiduciary duty. The claims asserted herein are properly maintainable as a class action under Federal Rule of Civil Procedure 23 ("Rule 23").

119.    The Rule 23 class is defined as follows:

All participants and beneficiaries of the Plan at any time on or after November 13, 2013 excluding Defendants and any participant who is a fiduciary to the Plan.

120.    The class action is maintainable under subsections (1), (2), (3) and (4) of Rule 23(a).

121.    The Class is so numerous that joinder of all members is impracticable. The Plan had over 8,000 participants with account balances during the Class period.

122.    Common issues of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class Members. Among the common issues of law and fact are the following:

- Whether Defendants are fiduciaries of the Plan;

- Whether Defendants breached their fiduciary duties by engaging in the conduct described herein;

- A determination of the losses to the Plan and proper measure of monetary relief due to the breach of fiduciary duties;

- A determination of equitable and injunctive relief that should be imposed due to the breach of fiduciary duties.

123.    These common questions of law and fact also predominate over any questions affecting only individual Class members.

124. The Named Plaintiffs' claims are typical of the claims of other members of the Class because Named Plaintiffs, like other Class members, participated in the Plan and have suffered injuries due to Defendants' imprudence. Defendants treated Named Plaintiffs the same as members of the Class with regard to the Plan.

125. Named Plaintiffs and their counsel will fairly and adequately protect the interests of the Class. Named Plaintiffs have no interest antagonistic to the Class and have retained counsel experienced in complex class action litigation.

126. Class counsel Thomas & Solomon LLP is qualified and able to litigate Named Plaintiff and Class claims.

127. Thomas & Solomon LLP concentrates its practice in employment litigation, and its attorneys are experienced in class action litigation.

128. A class action is superior to other available methods for the fair and efficient adjudication of this controversy and avoids duplication by allowing these claims to be prosecuted in a single action. Named Plaintiffs and Class members lack the resources to adequately prosecute separate claims, and the amount that each individual stands to recover makes individual cases impractical to pursue.

129. The class action is also maintainable under subsection (2) of Rule 23(b) because the Named Plaintiffs and Class members seek injunctive relief against Defendants.

130. Moreover, the class action is maintainable under subsection (3) of Rule 23(b) because the Named Plaintiffs and Class members seek to resolve common questions of law and fact that predominate among the Named Plaintiffs and Class members and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

131.    The Class is also maintainable under Rule 23(c)(4) because resolution of common issues will significantly advance the litigation or entitle Plaintiffs to injunctive relief.

### FIRST CAUSE OF ACTION
*Breach of Fiduciary Duty Pursuant to ERISA*

132.    Plaintiffs hereby re-allege the above paragraphs as if fully restated herein.

133.    Defendants are fiduciaries of the Plan, including under 29 U.S.C. § 1002(21) and/or § 1102(a)(1).

134.    This count arises from Defendants' breach of their fiduciary duties under ERISA.

135.    29 U.S.C. § 1104 imposes fiduciary duties of prudence and loyalty upon Defendants and requires Defendants, as fiduciaries of the Plan, to act prudently and solely in the interest of the Plan's participants and beneficiaries in administering and managing the Plan and the Plan's investments.

136.    The scope of the fiduciary duties and responsibilities of Defendants includes acting with the care, skill, diligence, and prudence of an expert, as required by ERISA.

137.    Further, Defendants are responsible for defraying the reasonable expenses of the Plan, for selecting and retaining prudent investment options, for evaluating and monitoring the Plan's investments on an ongoing basis and eliminating imprudent ones, and for taking all necessary steps to ensure that the Plan's assets are spent prudently.

138.    Defendants owe to the Plan and the Class extensive fiduciary duties including, without limitation:

> a.    To conduct themselves with the care, skill, prudence, and diligence under the circumstances that a prudent expert would exercise in operating and administering plans of comparable size and character to the Plan;

b.  To perform their duties with the utmost loyalty and fidelity the Plan and the Plan's participants and beneficiaries, avoiding at all times conflicts of interest, self-interest, and duplicity;

c.  To ensure, at all times, that Plan's assets shall be held for the exclusive purposes of providing benefits to the Plan's participants and beneficiaries and defraying reasonable expenses of administering the Plan;

d.  To prudently select and maintain investment options for the Plan and to analyze and monitor them on an ongoing basis to ensure that such investment options are prudent;

e.  To track and account for all transactions involve the Plan and the Plan's assets so as to ensure that the Plan's assets are retained, managed, and disbursed in compliance with ERISA;

f.  To track and account for all transactions involving the Plan and the Plan's assets so as to ensure that the Plan's assets are held for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan;

g.  To ensure that the fees and expenses incurred by the Plan are reasonable and incurred for the sole and exclusive benefit of the Plan's participants and beneficiaries;

h.  To ensure that payments from the Plan, whether they are direct or indirect, are reasonable for the services provided and made for the sole and exclusive benefit of the Plan's participants and beneficiaries;

i.  In operating and administering the Plan, to establish, implement, and follow procedures to properly and prudently determine whether the fees and expenses paid by the Plan were reasonable and incurred solely for the benefit of the Plan's participants;

j.  In operating and administering the Plan, on an ongoing basis to monitor the payments made by the Plan to service providers, whether they are direct or indirect, and to ensure they are and remain reasonable for the services provided and made for the sole and exclusive benefit of the Plan's participants and beneficiaries;

k.  To inform themselves of trends, developments, practices, and policies in the retirement, financial investment and securities industry which affect the Plan, and to remain aware and knowledgeable of such trends, practices and policies on an ongoing basis;

l.  To communicate with the Plan's participants and beneficiaries regarding the Plan honestly, clearly, completely, and accurately;

m.  To affirmatively and without request provide the Plan's participants and beneficiaries with honest, accurate, and complete information they need to understand their investments in the Plan, the management, risk, potential returns of such investments, and the fees and expenses incurred in connection with those investments;

n.  Upon request, to provide information in the Plan's participants and beneficiaries regarding the operation and administration of the Plan and the expenses incurred in doing so; and

o.  To provide honest, accurate and complete information to the Plan's participants and beneficiaries regarding the costs associated with their various investment choices and directions.

139.  Defendants' fiduciary duties include "a continuing duty to monitor trust investments and remove imprudent ones." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828, 191 L. Ed. 2d 795 (2015).

140.  Defendants failed to manage the assets of the Plan for the sole and exclusive benefit of the Plan's participants and beneficiaries, to defray reasonable expenses of administering the Plan, and to act with the requisite care, skill, diligence, and prudence.

141.  Defendants failed to meet their duties by causing the Plan to pay, directly or indirectly, completely or in part, fees and expenses that were unreasonable and not incurred solely for the benefit of the Plan's participants and beneficiaries.

142.  Defendants failed to meet their duties by failing to monitor the fees and expenses paid by the Plan and, by such failure, causing, or allowing the Plan to pay fees and expenses that were unreasonably and not incurred solely for the benefit of the Plan's participants and beneficiaries.

143.  Defendants failed to meet their duties by imprudently selecting and maintaining investment options for the Plan, failing to monitor and analyze them on an ongoing basis to ensure they were prudent, and failing to remove imprudent investment options.

144.  Defendants failed to meet their duties by failing to establish, implement, and follow procedures to properly and prudently determine whether the fees and expenses paid by the Plan were reasonable and incurred solely for the benefit of the Plan's participants.

145.    Defendants failed to meet their duties by failing to communicate with the Plan's participants and beneficiaries regarding the Plan honestly, clearly, and accurately, including failing to properly inform or disclose to the Plan's participants and beneficiaries the fees and expenses that are, or have been, paid by the Plan.

146.    Defendants failed to meet their duties by failing to exercise the care, skill, prudence and diligence that a prudent expert would when acting in like capacity.

147.    Defendants acted imprudently by selecting and retaining retail class shares of target-date mutual funds with 12b-1 fees for the Plan when identical investor or institutional class shares of the same funds were available without a 12b-1 fee.

148.    Defendants failed to monitor the Plan's investments to ensure that the Plan was invested in the lowest-cost share class of each mutual fund within the Plan, and failed to transfer the Plan's investments into lower-cost share classes when those cheaper share classes became available.

149.    By choosing the more expensive retail class of funds over the identical but less expensive investor or institutional class of the same funds, Defendants failed to discharge their duties with respect to the Plan with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a similar capacity and familiar with such matters would use in violation of 29 U.S.C. § 1104.

150.    Each of the foregoing actions and failures to act in a prudent manner alleged herein demonstrates Defendants' failure to meet their fiduciary obligations.

151.    Each of the foregoing actions and failures to act in a prudent manner alleged herein demonstrates Defendants' failure to monitor the Plan and make investment decisions based solely on the merits of each investment and what was in the interest of the Plan's

participants. Instead, Defendants retained higher-cost shares of mutual funds and failed to investigate the availability of lower-cost share classes.

152.    As described throughout this Complaint, Defendants failed to defray reasonable expenses of administering the Plan, to monitor the Plan's investments to ensure that the Plan was invested in the lowest-cost share class of each mutual fund within the Plan, and to transfer the Plan's investments into lower-cost share classes.

153.    Through the actions and omissions described in this Complaint, Defendants failed to discharge their duties with respect to the Plan with the care, skill, prudence, and diligence required by ERISA, thereby breaching their fiduciary duties.

154.    Defendants also knowingly participated in each breach of the other Defendants, knowing that such acts were a breach, enabled the other Defendants to commit breaches by failing to lawfully discharge such Defendant's own duties, and/or knew of the breaches by the other Defendants and failed to make any reasonable and timely effort under the circumstances to remedy the breaches. Accordingly, each Defendant is also liable for the losses caused by the breaches of its co-fiduciaries.

155.    Each of the Defendants is personally liable and Defendants are jointly and severally liable to make good to the Plan the losses resulting from the breaches described herein, to restore to the Plan any profits Defendants made through the use of the Plan's assets and to restore to the Plan any profits resulting from the breach of fiduciary duties alleged herein.

156.    Total losses to the Plan will be determined after complete discovery in this case and are continuing.

### SECOND CAUSE OF ACTION
*Failure to Monitor Fiduciaries Pursuant to ERISA*

157.    Plaintiffs hereby re-allege the above paragraphs as if fully restated herein.

158.    As alleged throughout this Complaint, Defendants are fiduciaries of the Plan.

159.    As alleged in this Complaint, Defendants had or claim to have the authority to delegate certain responsibilities to other parties.

160.    To the extent Defendants had or exercised such authority and/or properly delegated any fiduciary duty, Defendants therefore had a fiduciary responsibility to monitor the performance of any such appointees.

161.    To the extent any Defendant's fiduciary responsibilities were properly delegated, such delegating Defendant was obligated to ensure that any delegated tasks were being performed prudently and loyally in accordance with ERISA.

162.    A monitoring fiduciary must ensure that its appointees are performing their fiduciary obligations, including those with respect to the investment, holding and monitoring of plan assets, and must take prompt and effective action to protect the plan and its participants when the monitored fiduciaries fail to perform their fiduciary obligations in accordance with ERISA.

163.    To the extent any of Defendants' fiduciary responsibilities were properly delegated to an appointee, such delegating Defendants' monitoring duty included an obligation to ensure that any delegated tasks were being performed in accordance with ERISA's fiduciary standards.

164.    To the extent that Defendants' fiduciary monitoring responsibilities were delegated, each Defendant's monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

165.    Defendants breached their fiduciary monitoring duties by, among other things:

a) Failing to monitor and evaluate the performance of their appointees or have a system in place for doing so;

b) Failing to monitor their appointees' fiduciary process, including the processes by which the Plan's investments were evaluated, which would have alerted a prudent fiduciary to the breach of fiduciary duty;

c) Failing to monitor their appointees' fiduciary process, including the processes by which the Plan's investments were evaluated, which would have alerted a prudent fiduciary to the failure to investigate the availability of lower-cost share classes;

d) Failing to ensure their appointees considered the ready availability of comparable investment options to the Plan, including lower-cost share classes of the identical mutual funds; and

e) Failing to remove their appointees whose performance was inadequate in that they continued to maintain imprudent, excessively costly investments within the Plan, all to the detriment of the Plan and the Plan's participants' retirement savings.

166.    As a consequence of the foregoing breaches of the duty to monitor, the Plan suffered and continue to suffer losses due to excessive fees.

167.    Had Defendants discharged their fiduciary monitoring duties prudently as described above, the losses suffered by the Plan would have been avoided. Therefore, the Plan, Plaintiffs and other class members suffered losses as a direct result of the breaches of fiduciary duty alleged herein.

168.   Pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(a)(3), Defendants are personally liable to restore to the Plan all losses suffered as a result of the fiduciary breaches that resulted from their failure to properly monitor the Plan's fiduciaries, and subsequent failure to take prompt and effective action to rectify any observed fiduciary breaches. Each Defendant is likewise subject to other equitable or remedial relief as appropriate.

169.   Defendants also knowingly participated in each breach of the other Defendants, knowing that such acts were a breach, enabled the other Defendants to commit breaches by failing to lawfully discharge such Defendant's own duties, and/or knew of the breaches by the other Defendants and failed to make any reasonable and timely effort under the circumstances to remedy the breaches. Accordingly, each Defendant is also liable for the losses caused by the breaches of its co-fiduciaries.

170.   Each of the Defendants is personally liable and Defendants are jointly and severally liable to make good to the Plan the losses resulting from the breaches described herein, to restore to the Plan any profits Defendants made through the use of the Plan's assets and to restore to the Plan any profits resulting from the breach of fiduciary duties alleged herein.

171.   Total losses to the Plan will be determined after complete discovery in this case and are continuing.

### THIRD CAUSE OF ACTION
*Other Remedies for Breach of Fiduciary Duty under ERISA*

172.   Plaintiffs hereby re-allege the above paragraphs as if fully restated herein.

173.   In addition to, and as an alternative to, the causes of action stated above, Plaintiffs seek further relief pursuant to ERISA § 502(a)(3), 29 U.S.C., § 1132(a)(3).

174.   Under ERISA § 502(a)(3), a participant may enjoin any act which violates ERISA or may obtain other appropriate equitable relief to redress such violations or enforce the terms of ERISA.

175.   Defendants are the primary fiduciaries of the Plan and occupy a position of trust and confidence in connection with the Plan, the Plan's assets, and the Plan's participants and beneficiaries.

176.   Defendants have exclusive discretion and control over the Plan's assets and are strictly obligated to exercise that control for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan.

177.   Although only the Plan's participants and beneficiaries are entitled to the Plan's assets and to the benefit of the Plan's assets, in the absence of full and candid disclosure from Defendants, the Plan's participants and beneficiaries do not know, and have no means of knowing, how their assets have been managed and disbursed.

178.   Accordingly, Defendants occupy the position of a common law trustee in connection with the Plan, its assets, and its participants and beneficiaries.

179.   Defendants have caused and/or allowed the Plan to pay, directly or indirectly, excess fees and expenses and/or allowed the Plan to invest in, and remain invested in, imprudent investment options, and to suffer losses.

180.   Defendants, and not the Plaintiffs, are the entities that have or should have specific and detailed information regarding how the Plan's assets have been treated and disbursed in this regard.

181.   Accordingly, the Court should order that Defendants render an accounting of all transactions, disbursements and dispositions occurring in, in connection with, or in respect of, the Plan and the Plan's assets.

182.   Plaintiffs respectfully request that the Court order that such an accounting include, without limitation, detailed and specific information regarding all fees and expenses incurred by the Plan or paid to third parties, whether paid directly or indirectly.

183.   Plaintiffs respectfully request that the Court surcharge against the Defendants and in favor of the Plan all amounts involved in transactions which such accounting reveals were or are improper, excessive or in violation of ERISA.

184.   Plaintiffs further seek injunctive and other appropriate equitable relief to redress the wrongs described above and to cause them to cease in order for the Plan's participants and beneficiaries to receive the full benefit of their retirement savings in the future.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in their favor and that they be given the following relief:

a.   A declaration that Defendants have breached their fiduciary duties under ERISA;

b.   an order certifying the class as requested and designating Thomas & Solomon LLP as class counsel;

c.   designation of Ashley Savage, David Leidlein, Ronald Cohen, and James Sherburne as Class Representatives;

d.   imposition of a constructive trust on any amounts by which Defendants were unjustly enriched at the expense of the Plan due to the breach of fiduciary duties under ERISA;

e.   an order that Defendants be required to provide an accounting of the losses the Plan suffered due to Defendants' breach of their fiduciary duties under ERISA;

f.   an order requiring Defendants to render an accounting as set forth above;

g.      an order compelling Defendants to personally make good to the Plan all losses that the Plan incurred as a result of the breaches of fiduciary duties described above, and to restore the Plan to the position they would have been in but for this unlawful conduct;

h.      the amount equal to the value that would make Named Plaintiffs and the Class Members whole for the violations;

i.      an order enjoining Defendants from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

j.      an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Named Plaintiffs' and Class Members' rights pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

k.      an award of pre- and post-judgment interest;

l.      service payments for the Named Plaintiffs; and

m.      such other and further legal or equitable relief as this Court deems to be just and appropriate.

## JURY DEMAND

Plaintiffs demand a jury to hear and decide all issues of fact in accordance with Federal Rule of Civil Procedure 38(b).

Dated: November 13, 2019

THOMAS & SOLOMON LLP

By:      Michael J. Lingle, Esq.
Annette M. Gifford, Esq.
Adam T. Sanderson, Esq.
*Attorneys for Plaintiffs*
693 East Avenue
Rochester, New York 14607
Telephone:  (585) 272-0540
mlingle@theemploymentattorneys.com
agifford@theemploymentattorneys.com
asanderson@theemploymentattorneys.com