UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ASHLEY SAVAGE, DAVID LEINDLEIN,
RONALD COHEN, AND JAMES
SHERBURNE, *individually and as
representatives of similarly situated persons,
and on behalf of the Plan*,

                     Plaintiffs,

      v.

SUTHERLAND GLOBAL SERVICES, INC.,
CVAGS, LLC d/b/a CLEARVIEW GROUP,
SHILPA KONDA, DIANA MOHORTER,
LORI D'AMBROSIO, KATHLEEN
DECANN, and JOHN DOES 1-20,

                Defendants.
_____

**DECISION AND ORDER**

6:19-CV-06840 EAW

## INTRODUCTION

Plaintiffs Ashley Savage, David Leidlein, Ronald Cohen, and James Sherburne (collectively "Plaintiffs") bring this putative class action individually, on behalf of the Sutherland Global Services, Inc. 401(k) Plan (the "Plan"), and on behalf of all other similarly situated participants and beneficiaries of the Plan, against Sutherland Global Services, Inc., Lori D'Ambrosio, Kathleen DeCann, Shilpa Konda, and Diane Mohorter (collectively "Sutherland"), CVAGS, LLC d/b/a Clearview Group ("Clearview"), and John Does 1-20 (all collectively "Defendants"). (Dkt. 1). Plaintiffs allege that Defendants breached their fiduciary duties by failing to minimize the Plan's fees and expenses as required by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C.

§ 1001 *et seq.* (*Id.*). Before the Court are: (1) Plaintiffs' motion for class certification (Dkt. 122); (2) Sutherland's motion to seal (Dkt. 124); and (3) Plaintiffs' motion to seal (Dkt. 129).

For the following reasons, Plaintiffs' motion to seal, Sutherland's motion to seal, and Plaintiffs' motion for class certification are denied.

## PROCEDURAL BACKGROUND

On November 13, 2019, Plaintiffs filed their complaint. (*See* Dkt. 1 at ¶¶ 132-84). On April 2, 2020, Sutherland filed an answer to the complaint. (Dkt. 23). Clearview filed a motion to dismiss the same day (Dkt. 24), which the Court denied (Dkt. 46), and Clearview later filed its answer (Dkt. 52).

Following some discovery, Plaintiffs filed a motion for class certification on November 22, 2023. (Dkt. 122). On December 18, 2023, Clearview and Sutherland each filed responses to Plaintiffs' motion. (Dkt. 125; Dkt. 126). Plaintiffs filed their reply on January 8, 2024. (Dkt. 130).

Also on December 18, 2023, Sutherland filed a motion to seal. (Dkt. 124). Plaintiffs filed their own motion to seal on January 8, 2024. (Dkt. 129). Clearview informed the Court that it did not oppose either motion to seal. (Dkt. 135; Dkt. 136). Plaintiffs filed a response to Sutherland's motion to seal (Dkt. 137), but Sutherland never filed a response to Plaintiffs' motion to seal.

# DISCUSSION

## I.   Motions to Seal

On January 3, 2022, United States Magistrate Judge Marian W. Payson entered a stipulated protective order for discovery materials "involving trade secrets, sensitive personnel information, or confidential research, development or commercial information." (*See* Dkt. 57 at ¶ 1).   The types of discovery materials covered by the protective order "includ[e], without limitation, deposition testimony, answers to requests for admissions, answers to interrogatories, and documents or things which contain information the parties agree should be subject to this designation." (*Id.* at ¶ 3).   The attached addendum provides that the following items are covered by the order: (1) pay records; (2) personnel files; (3) all of Defendants' highly sensitive personal, business, and corporate financial information; (4) documents containing sensitive financial information related to Sutherland's current or former employees; and (4) "[i]nformation likely to cause harm to the competitive positioning of the designating party." (*Id.* at add.).

In its motion, Sutherland seeks to file under seal unredacted versions of the following documents: (1) the deposition transcript of Sutherland's 30(b)(6) witness from January 17, 2023 ("Exhibit 1"); (2) the declaration of attorney Kevin J. Mulvehill submitted in opposition to Plaintiffs' motion for class certification ("Exhibit 2"); (3) Sutherland's memorandum of law in opposition to Plaintiffs' motion for class certification ("Exhibit 3"); (4) Sutherland's supplemental objections and responses to Plaintiffs' interrogatories from February 19, 2021 ("Exhibit 4"); (5) Clearview's objections and supplemental responses to Plaintiffs' interrogatories from January 31, 2023 ("Exhibit 5"); (6) the

"Second Amendment to the Administrative Service Agreement for Sutherland Global Services, Inc. 401(k) Plan" ("Exhibit 6"); (7) the "T. Rowe Price Retirement Funds True Participant Expense Statement" ("Exhibit 7"); (8) a true and accurate copy of Plaintiff David Leidlein's account transactions ("Exhibit 8"); (9) a true and accurate copy of Plaintiff Ashley Savage's account transactions ("Exhibit 9"); (10) a true and accurate copy of Plaintiff James Sherburne's account transactions ("Exhibit 10"); and (11) a true and accurate copy of Plaintiff Ronald Cohen's account transactions ("Exhibit 11").  (*See* Dkt. 124-1 at ¶¶ 15-25).

Clearview does not oppose unredacted versions of the documents being filed under seal.  (*See* Dkt. 135).  Plaintiffs believe that Exhibits 1, 4, 5, 6, and 7 were improperly designated as "Confidential [Materials and/]or Confidential—Counsel and Expert Only Materials."  (*See* Dkt. 137 at 1).  But they do not oppose Sutherland's motion "to the extent [they] agree that the above documents remain designated Confidential [Materials and/]or Confidential—Counsel and Expert Only Material until such time as Sutherland removes the designations or the Court rules that the designations are improper."  (*Id.*).

In their motion, Plaintiffs seek to file under seal an unredacted copy of the affirmation of Adam T. Sanderson submitted in support of Plaintiffs' memorandum of law in further support of their motion for class certification, as well as "Exhibit B" and "Exhibit C" attached to that affirmation.  (*See* Dkt. 129 at 1).  Exhibit B and Exhibit C are presentations prepared by Clearview to help Sutherland decide on a vendor to maintain the Plan.  (*See* Dkt. 122-1 at 9).

- 4 -

A.    **Legal Standard**

At common law, there is a longstanding "right of public access to judicial documents." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006); *see also United States v. Erie Cnty.*, 763 F.3d 235, 238-39 (2d Cir. 2014) ("The notion that the public should have access to the proceedings and documents of courts is integral to our system of government."). "Before any such common law right can attach, however, a court must first conclude that the documents at issue are indeed 'judicial documents.'" *Lugosch*, 435 F.3d at 119. "[T]he mere filing of a paper or document . . . is insufficient to render that paper a judicial document." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"). Rather, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process . . . ." *Id.*

"Once the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption." *Lugosch*, 435 F.3d at 119. "The weight afforded to that presumption depends upon 'the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Mayer v. Patriot Pickle Inc.*, No. 23-CV-1299-LJV, 2024 WL 162881, at *2 (W.D.N.Y. Jan. 16, 2024) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*")). "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Amodeo II*, 71 F.3d at 1049.

"Finally, after determining the weight of the presumption of access, the court must balance competing considerations against it." *Lugosch*, 435 F.3d at 120 (internal quotation marks and citation omitted).  "Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Id.* (internal quotation marks and citation omitted).

**B.    Application**

The documents at issue in both motions to seal are judicial documents because they are exhibits related to Plaintiffs' motion for class certification, *see McKoy v. Trump Corp.*, No. 18 Civ. 9936 (LGS), 2023 WL 7924685, at *3 (S.D.N.Y. Nov. 16, 2023), and the presumption of public access to those documents carries great weight, *see Doe v. City of New York*, No. 15-CV-117 (AJN), 2019 WL 4392533, at *2 (S.D.N.Y. Sept. 13, 2019) ("After *Lugosch*, '[i]f a party submitted the document as part of the process of adjudication, the presumption of public access accorded the document is entitled to great weight.'" (alteration in original) (quoting *United States v. Sattar*, 471 F. Supp. 2d 380, 386 (S.D.N.Y. 2006))).  Although the documents are covered by the scope of the protective order, the parties do not provide any independent justification for sealing.  *See, e.g.*, *Simmons v. Ferrigno*, No. 17-CV-6176-FPG, 2023 WL 3713513, at *3 (W.D.N.Y. May 30, 2023) ("That material is designated as 'confidential' by a protective order . . . might not overcome the presumption of public access once it becomes a judicial document. Accordingly, that the Supplemental Response includes information within the scope of the Protective Order is not enough, on its own, to overcome the presumption of public access." (internal quotation marks and internal citations omitted)).  As such, both motions to seal

are denied.  Within 14 days of entry of this Decision and Order, the parties must either file unredacted versions of the documents on the docket, or file renewed motions to seal that are narrowly tailored and provide a thorough explanation of why the presumption of public access has been overcome.

## II.   Motion for Class Certification

### A.   Legal Standard

The Court next addresses Plaintiffs' motion for class certification.  (Dkt. 122).  To determine "whether class certification is appropriate, a district court must first ascertain whether the claims meet the preconditions of . . . numerosity, commonality, typicality, and adequacy" under Federal Rule of Civil Procedure 23(a).  *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008).  More specifically, the proposed class must meet the following requirements:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  If those four requirements are met, the Court may grant class certification if one of the subsections of Rule 23(b) is also satisfied.  *See Elisa W. v. City of New York*, 82 F.4th 115, 122 (2d Cir. 2023).

Here, Plaintiffs seek certification of a class of "[a]ll participants in the Sutherland Global Services, Inc. 401(k) Plan from November 13, 2013, through the date of the

judgment, excluding [ ] Defendants and any participant who is a fiduciary to the plan."
(Dkt. 122-1 at 9).  Plaintiffs seek certification under Rule 23(b)(1), which allows a class
action to be maintained if separate actions would create a risk of either: (1) "inconsistent
or varying adjudications with respect to individual class members that would establish
incompatible standards of conduct for the party opposing the class; or" (2) "adjudications
with respect to individual class members that, as a practical matter, would be dispositive
of the interests of the other members not parties to the individual adjudications or would
substantially impair or impede their ability to protect their interests."  Fed. R. Civ. P.
23(b)(1).

Plaintiffs contend that the putative class members have a common claim "that
Defendants breached their fiduciary duties under ERISA with respect to the Plan's
administrative and/or recordkeeping fees." (Dkt. 122-1 at 8).  Plaintiffs allege that:

> [Sutherland's] vendor search process that commenced in 2014 identified T.
> Rowe Price, as the top candidate, with [Automatic Data Processing, Inc.
> ("ADP")] "a distant second."  Sutherland, however, decided not to give the
> business to . . . T-Rowe Price, but instead to the "distant second," ADP, who
> was a large client of Sutherland's and who had used its relationship with
> Sutherland to be given the 401(k) work.  ADP's lobbying efforts were
> successful and therefore Sutherland put its own interests ahead of the Plan.
> Because of this, the Plan sustained significant losses—and went with an
> inferior vendor according to Sutherland's own internal analysis.

(*See* Dkt. 122-1 at 9 (internal citations omitted)).  Plaintiffs refer to this claim as the
"Excessive Recordkeeper Total Compensation Claim." (Dkt. 130 at 5).

## B.   Standing

In opposition to Plaintiffs' motion for class certification, both Clearview and
Sutherland argue that Plaintiffs lack standing to assert the Excessive Recordkeeper Total

- 8 -

Compensation Claim.  (*See* Dkt. 125 at 11-18; Dkt. 126 at 13-17).[1]  Defendants' arguments

address both Article III standing and class standing.  Sutherland also makes an argument

regarding Plaintiffs' status as "participants" under ERISA, which implicates what "was

formerly called 'statutory standing.'"  *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,

821 F.3d 352, 359 (2d Cir. 2016).  The Court considers these arguments below.

## 1. Article III Standing

Because the presence or absence of Article III standing implicates the Court's

subject matter jurisdiction, the Court will consider this issue first.  *See Singh v. United*

*States Citizenship & Immigr. Servs.*, 878 F.3d 441, 445 (2d Cir. 2017) ("Federal courts are

courts of limited jurisdiction and must independently verify the existence of subject-matter

jurisdiction before proceeding to the merits.").  "Article III standing has three elements: (i)

'the plaintiff must have suffered an injury in fact' that is 'concrete and particularized' as

well as 'actual or imminent'; (ii) 'there must be a causal connection between the injury and

the conduct complained of'; and (iii) 'it must be likely . . . that the injury will be redressed

by a favorable decision.'"  *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d

370, 381 (2d Cir. 2021) (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S.

555, 560-61 (1992)).  "[S]tanding is not dispensed in gross" and "a plaintiff must

---

[1]    As discussed further below, the specifics of the Excessive Recordkeeper Total
Compensation Claim are not articulated in the complaint, which asserts in more general
terms that Defendants have "[e]ither directly or indirectly . . . caused the Plan to purchase
trustee, recordkeeping, administration, investment management, brokerage, consulting,
auditing, and/or other services.  Those fees are, and have been, unreasonable and excessive,
especially in light of the Plan's size and asset value."  (Dkt. 1 at ¶ 96).  Clearview's motion
to dismiss thus did not address this specific claim and particularly did not raise the issue of
standing, and the Court has not had prior occasion to consider this issue.

demonstrate standing for each claim [it] seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (quotations omitted).

"Each element of standing must be supported with the manner and degree of evidence required at the successive stages of litigation." *New York v. Yellen*, 15 F.4th 569, 575 (2d Cir. 2021) (alterations, internal quotation marks, and citation omitted). And the "party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. "[W]here jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings to determine whether jurisdiction exists." *Boyette v. Montefiore Med. Ctr.*, No. 22-cv-5280 (JGK), 2023 WL 7612391, at *3 (S.D.N.Y. Nov. 13, 2023) (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

Defendants argue that Plaintiffs have not plausibly alleged injury-in-fact with respect to the Excessive Recordkeeper Total Compensation Claim.[2] The Court disagrees,

---

[2]      Inexplicably, Plaintiffs contend in their reply that "[a]lthough defendants know full well plaintiffs are asserting a claim for class certification based on the Excessive Recordkeeper Total Compensation Claim . . ., they do not, and cannot, argue that plaintiffs lack standing to certify that claim. Instead, defendants argue that plaintiffs do not have standing to certify an entirely different claim, a claim that the selection of the share class for mutual fund offered as investment options." (Dkt. 130 at 7). This contention is simply incorrect. Clearview's argument about Article III standing has an entire section devoted to the selection of ADP as recordkeeper for the Plan. (*See* Dkt. 125 at 15-16). And while Sutherland's argument is stated in more general terms, it also states that "[t]o the extent that the named plaintiffs assert that they have suffered some other injury [outside what is alleged in the complaint] based on some other alleged breach of fiduciary duty, Plaintiffs have failed to meet their burden to identify said injury." (Dkt. 126 at 17). Defendants'

for the reasons that follow.  At the outset, the Court notes that its analysis is complicated by the fact that the Excessive Recordkeeper Total Compensation Claim is not articulated in the complaint.  Instead, the theory of injury alleged in the complaint has to do with Defendants "selecting and retaining retail class shares of target-date mutual funds with 12b-1 fees for the Plan when identical investor or institutional class shares of the same funds were available without a 12b-1 fee."  (Dkt. 1 at ¶ 147).  Plaintiffs acknowledge that their theory of injury has changed during this litigation (*see* Dkt. 130-1 at ¶ 12 (stating that "the evidence that came to fruition after this action was commenced evolved the basis under which defendants caused the Plan to suffer payment of excessive, unreasonable, and/or unnecessary fees")), but contend that "the Excessive Recordkeeper Total Compensation Claim is logically consistent with plaintiffs' allegations in the Complaint that defendants failed to manage the assets of the Plan for the sole and exclusive benefit of the Plan's participants and beneficiaries, to defray the reasonable expenses of administering the Plan, and to act with the requisite care, skill, diligence, and prudence" (*id.*).[3]

Because the Excessive Recordkeeper Total Compensation Claim is not articulated in the complaint, the complaint is devoid of any allegations regarding injury from the selection of ADP as a vendor.  Plaintiffs allege in their complaint that the Plan incurred "administrative expenses" exceeding $695,000, or approximately $120 per participant, in

---

submissions squarely called into question whether Plaintiffs had alleged injury-in-fact as to the Excessive Recordkeeper Total Compensation Claim.

[3]     The deadline for motions to amend the pleadings in this case was March 8, 2021. (Dkt. 41).  Plaintiffs did not seek to add any allegations related to the Excessive Recordkeeper Total Compensation Claim to the complaint prior to that date.

2018 (Dkt. 1 at ¶ 99), but provide no further breakdown with respect to these fees, including any representations with respect to the fees that they individually paid.  Nor have Plaintiffs alleged any facts that would allow a fact-finder to conclude that the fees they actually paid fell outside a reasonable range or were higher than those charged by comparable vendors.  Standing alone, the allegations in the complaint do not establish standing as to the Excessive Recordkeeper Total Compensation Claim.  *See Boyette*, 2023 WL 7612391, at *4 ("[W]ithout setting forth what they individually paid each year in recordkeeping fees, [the plaintiffs] cannot allege that the fees they paid were unreasonable or outside the range of reasonableness set forth in the [complaint].  Because they fail to plead a cognizable injury for Article III standing on their recordkeeping fees claim, the claim must be dismissed.").

But in their reply, Plaintiffs identify a potential injury-in-fact, stating that "one key difference between ADP and T. Rowe Price was transactional fees, including a $50 fee for account distributions/withdrawals that would be assessed against participants['] account balances that ADP would charge and T. Rowe Price would not."  (Dkt. 130-1 at ¶ 22).  Plaintiffs rely on this contention to argue that "each of the Named Plaintiffs and putative class members were harmed, *inter alia*, as a result of having their retirement savings depleted by unreasonable and unnecessary fees in the form of transactional fees."  (*Id*. at ¶ 24; *see also* Dkt. 130 at 7 ("[P]laintiffs seek to certify a class based on the Excessive Recordkeeper Total Compensation Claim, *i.e.*, a class consisting of those participants subject to the unreasonable and unnecessary $50 transactional fee stemming from the 2014 RFP process.")).

As discussed further in connection with the issue of class standing, Plaintiffs'
argument assumes without support that every member of the proposed class would have
paid the $50 fee for withdrawals and distributions, and neither the complaint nor the record
before the Court supports such a conclusion.  It is not even clear that all the named plaintiffs
paid such a fee—while the account transaction histories for named plaintiffs Ronald Cohen,
Ashley Savage, and James Sherburne each reflect the payment of at least one $50
distribution fee, the account transaction history for named plaintiff David Leidlein does
not.[4]  But "[Article III s]tanding is satisfied so long as at least one named plaintiff can
demonstrate the requisite injury."  *Hyland v. Navient Corp.*, 48 F.4th 110, 117 (2d Cir.
2022), *cert. denied sub nom. Yeatman v. Hyland*, 143 S. Ct. 1747 (2023), *and cert. denied
sub nom. Carson v. Hyland*, 143 S. Ct. 1747 (2023).  The payment of a fee that would not
otherwise have needed to be paid is a concrete injury-in-fact.  *See Gonzalez v. Northwell
Health, Inc.*, 632 F. Supp. 3d 148, 159 (E.D.N.Y. 2022) ("[A]llegations that plaintiff
suffered specific losses as a result of the alleged breach of fiduciary duty are sufficient to
generate standing[.]" (quotation omitted)).

Clearview's argument that Plaintiffs cannot demonstrate that the fees charged by
ADP were actually unreasonable conflates the standing inquiry with the merits inquiry.
"The issue of standing is distinct from whether a plaintiff has a cause of action," *Toretto v.*

---

[4]     These documents are part of Sutherland's motion to seal and are not currently on
the docket.  They are Exhibits E-I to Dkt. 126-1, the Declaration of Kevin J. Mulvehill.

        The Court notes that Leidlein did testify at his deposition that he had paid a $50
withdrawal fee sometime between 2016 and 2018.  (*See* Dkt. 125-7 at 19-20).  But his
account transaction history does not seem to bear this out.

*Donnelley Fin. Sols., Inc.*, 523 F. Supp. 3d 464, 473 (S.D.N.Y. 2021), and "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal," *Warth v. Seldin*, 422 U.S. 490, 500 (1975). The Court does not disagree that the mere fact that ADP charged a $50 fee for distributions and withdrawals is insufficient, without further context, to state a valid claim for breach of fiduciary duty under ERISA. Were the Cout considering a motion to dismiss the Excessive Recordkeeper Total Compensation Claim, these arguments would have been highly persuasive. But this merits-based deficiency does not mean that Article III standing is lacking as to the claimed payment of an excessive transactional fee. *See Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010) (finding that the plaintiff had standing despite significant legal flaws in his theory of injury, because "this is a merits issue not necessary for us to consider here, and we decline to do so" and "[t]he standing question is distinct from whether [the plaintiff] has a cause of action").

On the other hand, Clearview is correct that Plaintiffs lack Article III standing to seek prospective relief. As Clearview correctly notes, none of Plaintiffs are still enrolled in the Plan. They thus are not in danger of any future injury from the selection of ADP as recordkeeper.[5] "Where . . . plaintiffs seek injunctive or declaratory relief, they cannot rely

---

[5]     Although Plaintiffs do not raise this argument, the Court notes that named plaintiff David Leidlein apparently maintained an account with the Plan at the time this action was commenced in November 2019. However, he ceased maintaining an account with the Plan approximately four years ago, in September 2020. (Dkt. 125-4 at 3). Accordingly, any claim he might have once had to prospective relief is moot. *See Freeman v. U.S. Dep't of Agric.,* 6 F. App'x 95, 96 (2d Cir. 2001) ("Freeman's claims for prospective relief are rendered moot by the USDA's seizure and destruction of the sheep; no prospective relief

on past injury to satisfy the injury requirement but must show a likelihood that they will be injured in the future." *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021) (quotation and alteration omitted); *see also Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) ("To obtain *prospective* relief, such as a declaratory judgment or an injunction, a plaintiff must show, *inter alia*, 'a sufficient likelihood that he [or she] will again be wronged in a similar way." (emphasis and alteration in original and quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983))).  Plaintiffs' argument that they should be able to seek a declaratory judgment based on past harm (*see* Dkt. 130 at 12-13) is unavailing in light of this clear case law.  *See MC Mgmt. of Rochester LLC v. Biden*, 680 F. Supp. 3d 278, 286 (W.D.N.Y. 2023) (finding that the plaintiffs lacked standing to seek declaratory relief that past failure to grant applications was discriminatory, because there was "no plausible mechanism by which Plaintiffs could be subject to a future injury of the same type alleged in the complaint"), *aff'd*, No. 23-1086, 2024 WL 2350505 (2d Cir. May 23, 2024).  The proposed class must fail insofar as it seeks prospective relief.  *See Liberian Cmty. Ass'n of Ct. v. Lamont*, 970 F.3d 174, 185 (2d Cir. 2020) ("Because we conclude that none of the named plaintiffs has standing to pursue their claims for prospective relief, the class proposed by Appellants necessarily fails as well.").

---

that we could provide would accrue to Freeman's benefit. Consequently, Freeman now lacks the sort of immediate, concrete stake in the outcome of the suit necessary to present the 'case or controversy' required by Article III of the Constitution.").  Barring narrow exceptions not relevant here, "[i]f the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot." *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994).

## 2.   Class Standing

The Court next considers whether Plaintiffs have class standing to pursue the Excessive Recordkeeper Total Compensation Claim.  *See Holve v. McCormick & Co., Inc.*, 334 F. Supp. 3d 535, 544 (W.D.N.Y. 2018) ("Article III standing and class standing are different issues that require separate consideration." (citation and alteration omitted)).  In this Circuit, a named plaintiff's "standing to assert claims on others' behalf is an inquiry separate from its ability to represent the interests of absent class members under Fed. R. Civ. P. Rule 23(a)."  *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 n.9 (2d Cir. 2012).  *NECA* "distilled a two-part test for class standing": "a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants."  *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 161 (2d Cir. 2014) (citation omitted).

The Court finds that the second prong of this test is not satisfied here.  "[C]lass standing depends on the nature of the injury and the proof required to establish the claim."  *Curtis v. Aetna Life Ins. Co.*, 648 F. Supp. 3d 358, 366 (D. Conn. 2023).  "The core question is whether a plaintiff who has a personal stake in proving her own claims against the defendant has a sufficiently personal and concrete stake in proving other, related claims against the defendant."  *Ret. Bd.*, 775 F.3d at 163.  As set forth above, the injury that Plaintiffs allege is the payment of a $50 fee for withdrawals and distributions.  But their

proposed class consists of "[a]ll participants in the Sutherland Global Services, Inc. 401(k) Plan from November 13, 2013, through the date of the judgment, excluding [ ] Defendants and any participant who is a fiduciary to the plan." (Dkt. 122-1 at 9). There is nothing in the record before the Court to support the conclusion that the other members of the proposed class also paid the $50 fee that forms the relevant injury. Indeed, as previously noted, it is not even clear that named plaintiff David Leidlein paid this fee.

Class standing will not be found where the "alleged injuries [have] the potential to be very different—and could turn on very different proof." *NECA*, 693 F.3d at 163. This is precisely such a case. The members of the proposed class who did not pay the $50 withdrawal or termination fee cannot have been injured thereby. To the extent Plaintiffs are arguing that these putative class members were harmed by paying some other unidentified transactional fees, they have not demonstrated that those injuries are likely to be similar in scope or scale to the payment of the $50 fee for withdrawals and distributions, nor that the proof regarding the payment of such fees (and whether comparable fees were charged by competing vendors) is likely to be the same. They also have not alleged or presented any proof that they personally paid these unidentified other transactional fees. The Court cannot find that Plaintiffs have a personal and concrete stake in proving the unreasonableness of unidentified transactional fees that they did not pay.[6]

---

[6]   Alternatively, these same concerns would prohibit the Court from concluding that Plaintiffs' claims are typical of the proposed class. "Typicality is satisfied when the named plaintiffs bring claims for the same type of injury under the same legal theory as the rest of the class." *Dover v. Brit. Airways, PLC (UK)*, 321 F.R.D. 49, 55 (E.D.N.Y. 2017) (quotation omitted). Here, Plaintiffs' theory is that they were injured because they paid

In addition, the proposed class extends back to 2013, but Plaintiffs' own submissions make clear that the process by which ADP was chosen as a vendor occurred in 2014. Plaintiffs plainly have not established class standing to assert claims based on the alleged payment of excessive recordkeeping fees prior to the retention of ADP. Plaintiffs do not meaningfully address this flaw in their proposed class definition in their reply papers, but instead state in passing that "Defendants are correct that the claim relates to the results of the 2014 RFP process and plaintiffs do not dispute that the start of the class period should be adjusted accordingly." (Dkt. 130-1 at ¶ 28). But Plaintiffs do not propose any specific alternative start date for the proposed class period.

Plaintiffs' lack of class standing means that the Court cannot certify the class as currently proposed. To the extent this issue could be cured through modification of the proposed class definition, the Court is under no obligation to *sua sponte* craft an appropriate class, and does not find it appropriate to do so in this case. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 465 (S.D.N.Y. 2018).

---

ADP $50 fees for withdrawals and distributions that would not have been charged by a different vendor. But as the Court has discussed in detail, there is no basis to conclude that the rest of the class was allegedly injured in a similar fashion. Instead, some portion of the putative class was allegedly injured by paying some other kind of unidentified transaction fees. It is unknown what the basis for those alleged fees was, how much they amounted to, or whether comparable fees were charged by alternative vendors. Moreover, because the proposed class extends back to 2013 (before ADP was selected as a vendor), it is entirely unclear how claims based on the $50 fee charged by ADP could be typical of claims that pre-date the selection of ADP as a vendor.

### 3.    Plaintiffs' Status as "Participants"

Finally, the Court considers Sutherland's argument that Plaintiffs lack standing because they "do not fall within the definition of individuals who may bring a claim under ERISA." (Dkt. 126 at 13). Plaintiffs' claims are brought under 29 U.S.C. §§ 1132(a)(2) and (a)(3). (*See* Dkt. 1 at ¶ 2). Those sections empower only participants, beneficiaries, fiduciaries, and the Secretary of Labor to bring civil actions. *See Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 117 (2d Cir. 2022); *Kowal v. Hooker & Holcombe, Inc.*, No. 21-CV-1299-LJV, 2024 WL 1094959, at *6 (W.D.N.Y. Mar. 13, 2024). "A 'participant' is any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." *Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 350 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see* 29 U.S.C. § 1002(7).

As discussed above, none of Plaintiffs currently maintain an account with the Plan. Ashley Savage has not maintained an account with the Plan since December 2018 (Dkt. 125-3 at 3), Ronald Cohen has not maintained an account with the Plan since "approximately 2018" (Dkt. 125-5 at 3), James Sherburne has not maintained an account with the Plan since March 2017 (Dkt. 125-6 at 3), and David Leidlein maintained an account with the Plan until September 2020 (Dkt. 125-4 at 3). Sutherland contends that

Plaintiffs "do not have a colorable claim to vested benefits because they are no longer participants in the Plan." (Dkt. 126 at 13).[7]

Plaintiffs have not responded to this argument by Sutherland. But the Court's own research leads it to reject Sutherland's contention. As an initial matter, the Court notes that while Sutherland has included this argument in its discussion of standing, the Second Circuit has made clear that "a plaintiff's status as a 'participant' under ERISA . . . is a statutory requirement, not a constitutional one." *Coan v. Kaufman*, 457 F.3d 250, 256 (2d Cir. 2006). While the Second Circuit used to refer to this issue as one of "statutory standing," it has subsequently explained that "'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff has a cause of action under the statute." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quotation omitted). The matter is thus not one of standing at all, but of the validity of Plaintiff's causes of action.

As to the merits of Sutherland's argument, in *Coan*, the Second Circuit expressly left open the question of "whether acceptance of a lump-sum payment terminates a person's status as a participant" in a defined contribution plan. 457 F.3d at 255-56. The plaintiff in *Coan* was a former employee who had received a lump sum payment of her individual account balance, but contended that "the lump-sum distribution of her account balance would have been greater absent the defendants' breach of fiduciary duty[.]" *Id*. at 256.

---

[7]     Sutherland's motion papers do not acknowledge that named plaintiff David Leidlein maintained an account with the Plan at the time this action was commenced in 2019, nor do they discuss the impact of that fact on their argument.

Because it ultimately concluded that her claims failed on other grounds, the Second Circuit assumed without deciding that the plaintiff qualified as a participant. *Id*. But it found it arguable that the plaintiff's "claim that the lump-sum distribution of her account balance would have been greater absent the defendants' breach of fiduciary duty is a claim for benefits—which, if colorable, means that she may become eligible for benefits and thus qualifies as a participant under ERISA." *Id*. (quotations omitted).

Post-*Coan*, courts within and outside this Circuit have grappled with the circumstances in which former employees who have taken lump-sum payouts of their ERISA benefits may qualify as "participants." "Determining whether a plaintiff's claim is a claim for benefits and whether a petitioner who has received a lump-sum payment is therefore eligible to receive further ERISA benefits requires careful attention to the nature of the ERISA injury that is alleged and the type of relief sought for that injury." *Bilello v. JPMorgan Chase Ret. Plan*, 592 F. Supp. 2d 654, 664 (S.D.N.Y. 2009). Courts have generally concluded that "a claim that ERISA fiduciaries imprudently managed a defined contribution account may be brought by former employees who have already cashed out their retirement benefits, since they are seeking 'an amount of money to which they are entitled by the plan documents over what they received when they retired.'" *Id*. at 654 (quoting *Harzewski v. Guidant Corp.*, 489 F.3d 799, 804 (7th Cir. 2007)); *see also Vaughn v. Bay Env't Mgmt., Inc.*, 567 F.3d 1021, 1023 (9th Cir. 2009) ("This case requires us to consider whether a former employee who has received a full distribution of his or her account balance under a defined contribution pension plan has standing as a plan participant to file suit under the Employee Retirement Income Security Act of 1974

- 21 -

(ERISA), 29 U.S.C. § 1001 et seq., to recover losses occasioned by a breach of fiduciary duty that allegedly reduced the amount of his or her benefits. We join the First, Third, Fourth, Sixth, Seventh, and Eleventh Circuits, and hold that these former employees have standing to bring their claims.").

Sutherland's motion addresses none of this case law, but simply asserts without citation that Plaintiffs "do not have a colorable claim to vested benefits because they are no longer participants in the Plan." (Dkt. 126 at 13). The Court is unpersuaded by this argument. But the Court's rejection of this argument does not change its conclusion that Plaintiff's motion for class certification should be denied, for the reasons set forth above.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for class certification (Dkt. 122), Sutherland's motion to seal (Dkt. 124), and Plaintiffs' motion to seal (Dkt. 129) are denied. The parties are directed to either file unredacted versions of the documents on the docket, or file renewed motions to seal that are narrowly tailored and provide a thorough explanation of why the presumption of public access has been overcome, within 14 days of the date of this Decision and Order.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        August 28, 2024
              Rochester, New York